UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE | |
|---|---|---|
| Paul M. Cruz | | N/A |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| N/A | | N/A |

**Proceedings:** ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND VACATING MAGISTRATE JUDGE STEVENSON'S ORDER GRANTING APPLICATION FOR WRIT OF ATTACHMENT [15][49]

Before the Court is a motion to compel arbitration filed by Defendant Miramax Distribution Services, LLC ("Miramax"). Dkt. 15. For the reasons set forth below, Miramax's motion to compel arbitration is GRANTED, the case is STAYED pending arbitration, and Magistrate Judge Karen L. Stevenson's order granting Plaintiff Bank Leumi's application for a writ of attachment, Dkt. 49, is VACATED.

**I.     Factual Background**

    **A.     The Agreements**

In 2013, Good Films Enterprises, LLC ("Good Films") acquired the rights to produce a motion picture for which actor Johnny Depp was cast in the lead role. Complaint, Dkt. 1 ("Compl."), ¶ 9. Miramax, along with Open Road Films, LLC ("Open Road") and Global Road Entertainment, LLC ("Global Road" and, together with Miramax and Open Road, the "Distributors"),[1] agreed to finance the development and production of the movie and to distribute the movie throughout the world. *Id.* ¶ 10. Good Films entered into a Production Financing and Distribution Agreement with Miramax and Open

---

[1] Plaintiff alleges that Open Road is the predecessor-in-interest to Global Road. Compl. ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

Road dated November 4, 2016 (the "Distribution Agreement"), in which the Distributors agreed to distribute the movie and to pay minimum guaranteed amounts to Good Films upon delivery of the completed movie. *Id.* The Distribution Agreement granted Open Road distribution rights both domestically and internationally, including with airlines, for a minimum guarantee payment of $5,400,000 to Good Films upon delivery. *Id.* ¶ 11. The Distribution Agreement granted Miramax distribution rights for free television domestically in exchange for a minimum guarantee payment of $4,250,000 to Good Films upon delivery. *Id.* ¶ 12.

As part of the financing of the movie production, Good Films entered into a Loan and Security Agreement with Plaintiff dated as of December 16, 2016 (the "Loan Agreement"), in which Plaintiff agreed to lend Good Films up to $23,189,227. *Id.* ¶ 13. In return, Good Films agreed to repay all loaned amounts with interest and granted Plaintiff a first-priority security interest in Good Films' rights to and interest in the movie, including distribution rights and contract rights. *Id.*

To protect Plaintiff's security interest, Plaintiff entered into a Distributor Interparty Agreement with Miramax and Open Road dated as of December 16, 2016, Dkt. 1-1 (the "Interparty Agreement" or the "IPA"). Compl. ¶ 14. Pursuant to the Interparty Agreement, Miramax and Open Road agreed to pay their respective minimum guarantee payments directly to Plaintiff instead of to Good Films, as a mechanism for Good Films to pay off part of the loan from Plaintiff under the Loan Agreement. IPA §§ 2.1, 5.1(b). Miramax's minimum guarantee payment was to be paid in three installments: (1) an initial payment of $425,000 within 10 business days of the execution of the Interparty Agreement, (2) a "Mandatory Delivery Payment" of $3,802,150 within 5 business days of "Mandatory Delivery" of certain film materials from Good Films to Miramax,[2] and (3) a "Complete Delivery Payment" of $22,850 within 10 business days of "Complete Delivery" of the finished movie from Good Films to Miramax. *Id.* § 5.1(a). Miramax paid Plaintiff the initial payment of $425,000 following the execution of the Interparty Agreement, a fact which Plaintiff concedes. *See* Dkt. 22 at 3.

The delivery procedure is outlined in Section 3.1 of the Interparty Agreement. Section 3.1 provides that Good Films, and its guarantor Film Finances, Inc. (the "Guarantor"), shall deliver to Open Road all of the "Mandatory Delivery Materials" and/or the "Complete Delivery Materials" by a certain date, along with a "Tender Notice" stating that the Mandatory Delivery Materials have been tendered to the Distributors. IPA § 3.1(a). Open Road and Miramax have an opportunity to inspect the materials

---

[2] Delivery of the film materials to Open Road constitutes delivery to Miramax under the Interparty Agreement. IPA § 3.1.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

delivered to determine whether the materials are in accordance with the specification requirements identified in the Interparty Agreement. *Id.* § 3.1(b). If Open Road or Miramax has objections to any of the materials as delivered, the Distributor must notify Good Films of its objections to provide Good Films an opportunity to cure the defects. *Id.* §§ 3.1(b)(ii), (c)-(e). Once Good Films cures the identified defects and re-delivers the film materials, along with a "Cure Notice," Open Road and Miramax have a second opportunity to inspect the materials and lodge objections. *Id.* § 3.1(f). Good Films then has a second opportunity to cure the remaining defects in the materials. *Id.* § 3.1(g)-(i). If Open Road and Miramax fail to object to Mandatory Delivery within the designated time period after receiving a Cure Notice, then Good Films can send the Distributor a notice reminding the Distributor of its obligation to respond. *Id.* § 3.2(a). If the Distributor does not respond to the reminder notice within 3 business days, then "Mandatory Delivery shall then be conclusively deemed to have been effected solely for purposes of payment of the Mandatory Delivery Payment." *Id.*

The failure by any Distributor to pay its respective share of the Mandatory Delivery Payment to Plaintiff when due constitutes a default under the Interparty Agreement. *See id.* § 5.1(i). If a Distributor is found to be in default, the Distributor's rights and interests in distributing the movie, and the Distributor's rights and interests in the movie itself, are automatically divested and terminated, and those rights revert to Good Films. *Id.* § 5.1(i)(i), (iii). The Distributor in default is also obligated to return any Mandatory Delivery Materials and Complete Delivery Materials it received. *Id.* § 5.1(i)(iv).

### B. Arbitration under the Interparty Agreement

The Interparty Agreement establishes a scheme for resolving disputes about the parties' obligations under the Interparty Agreement, featuring two separate arbitration procedures.

First, for disputes between Good Films, the Guarantor, or the Distributors over whether Mandatory Delivery or Complete Delivery has been effected, the Interparty Agreement requires expedited, mandatory, and binding arbitration pursuant to the rules of the American Arbitration Association ("AAA"). IPA § 3.5(a). This type of arbitration, which the Court will herein refer to as "Delivery Arbitration," is limited only to the determination of

> whether Mandatory Delivery and/or Complete Delivery, as applicable, has been effected (without any determination as to delivery under the Distribution Agreement) and whether the Distributor is obligated to pay the Mandatory Delivery Payment or the Complete Delivery Payment, or whether, if Mandatory Delivery and/or Complete Delivery, as

| | : | |
|---|---|---|
| Initials of Preparer | | PMC |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

> applicable, was not effected, the amount the Guarantor is obligated to pay to the Lenders under the applicable Completion Guaranty, and to the Distributor the Deposit previously paid by the Distributor.

*Id.* The question of whether Mandatory Delivery or Complete Delivery has been effected "shall be determined in the arbitration proceeding before any other claim is heard," and parties are not allowed to assert in Delivery Arbitration "any counter-claim or other offset, or any defense or than the defense of a failure to effect Mandatory Delivery and/or Complete Delivery, as applicable." *Id.* § 3.5(f). Plaintiff, as the lender, may not initiate Delivery Arbitration but may elect to join as a party to the arbitration proceeding. *Id.* § 3.5(a).

Open Road or Miramax can initiate Delivery Arbitration by issuing an Arbitration Notice after receiving a Second Cure Notice from Good Films. *Id.* § 3.1(j). However, as noted above, if Open Road and Miramax fail to object to a Mandatory Delivery within the prescribed time period and do not respond to a reminder notice from Good Films within 3 business days, then "Mandatory Delivery shall then be conclusively deemed to have been effected solely for purposes of payment of the Mandatory Delivery Payment." *Id.* § 3.2(a).

Second, Section 10.2(a) of the Interparty Agreement provides for arbitration over any other disputes regarding the Interparty Agreement:

> Any disputes solely between the Borrower and the Distributor shall be determined pursuant to the Distribution Agreement. Any other controversies, claims or disputes arising out of or related to this Agreement or the interpretation, performance or breach thereof (other than whether Mandatory Delivery has been effected to the Distributor and its concomitant obligation to pay the Mandatory Delivery Payment, which shall be resolved in accordance with Section 3.5), any alleged violations of state or federal statutory or common law rights or duties, and the determination of the scope or applicability of this agreement to arbitrate ("<u>Dispute</u>"), except as otherwise set forth below, shall be resolved according to the following procedures which shall constitute the sole dispute resolution mechanism hereunder: If the parties are unable to resolve any Dispute informally, then such Dispute shall be submitted to final and binding arbitration. The arbitration shall be initiated and conducted according to AAA and the Rules.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

*Id.* § 10.2(a). Thus, this provision appears to contemplate binding arbitration, without time limits for when arbitration can be initiated, for any dispute regarding the Interparty Agreement other than the issue of whether delivery has been effected and whether the Distributors' obligation to pay the minimum guarantee payment arose. An exception exists for any disputes or portions thereof "that may not be arbitrated pursuant to applicable state or federal law," which may be brought in state or federal court in Los Angeles County. *Id.* § 10.2(e).

### C. Delivery and Refusal to Pay

Good Films delivered to Open Road the Mandatory Delivery Materials on February 13, 2018 and the Complete Delivery Materials on March 15, 2018. Compl. ¶ 17; Dkts. 19-10, 19-11. Open Road objected to the delivery of the materials twice, and Good Films cured the alleged defects twice. Compl. ¶ 18; *see also* Dkts. 19-12–19-19. After receiving the second cure notice, neither Open Road nor Miramax objected to the delivery nor sent an Arbitration Notice. Compl. ¶ 18. The Guarantor then sent a reminder notice as to Mandatory Delivery on June 14, 2018 and as to Complete Delivery on July 23, 2018. Dkts. 19-20, 19-21. Open Road and Miramax again failed to respond. Compl. ¶ 18. Plaintiff asserts that, pursuant to Section 3.2(a) of the Interparty Agreement, the Distributors' failure to respond to the reminder notices means that Mandatory Delivery and Complete Delivery were deemed effected on June 19, 2018 and July 26, 2018, respectively, thus triggering Miramax's obligation to pay the remainder of the minimum guarantee payments to Plaintiff. *Id.*

On July 11, 2018, Miramax emailed Plaintiff stating that Miramax would make the minimum guarantee payments, but the next day Miramax stated that it would not do so until hearing from Open Road[3] regarding whether Open Road would pay its minimum guarantee payment to Plaintiff. *Id.* ¶ 20. On July 17, 2018, Open Road indicated to Good Films that Open Road would not accept the movie and would not honor its payment obligations under the Distribution Agreement and Interparty Agreement. *Id.* ¶ 22.

On July 25, 2018, Plaintiff sent a letter to Miramax requesting payment of the minimum guarantee payment under the Interparty Agreement. *Id.* ¶ 26. Miramax responded, stating that because Good Films was not accepting delivery of the movie, Miramax also was not accepting delivery. *Id.* ¶ 27.

---

[3] Plaintiff's complaint quotes Miramax as referring to Global Road instead of Open Road, Compl. ¶ 20, but based on Plaintiff's allegation that Global Road is the successor entity to Open Road, the Court views this distinction as immaterial and will hereby refer to Global Road as Open Road.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

Miramax cited significant problems with the production of the movie, including certain highly-publicized allegations against Mr. Depp for a physical altercation with a crew member. *Id.* Miramax concluded its letter by stating that "no payment is due." *Id.* In a subsequent letter to Plaintiff on August 10, 2018, Miramax disclaimed an obligation to pay minimum guarantee payments due to "unresolved objections/challenges to delivery" and because Open Road's failure to fulfill its obligation to distribute the movie diminished the value of Miramax's rights under the Distribution Agreement. *Id.* ¶ 29.

On August 24, 2018, Plaintiff sent letters to Miramax and Open Road stating that the Distributors were in default of the Interparty Agreement and that the Distributors' rights and interests to distribute the movie automatically divested and terminated pursuant to Section 5.1(i) of the Interparty Agreement. *Id.* ¶ 30. Plaintiff alleges that the Distributors failed to respond to Plaintiff's letter and failed to return delivery materials to Good Films or pay the minimum guarantee payments due under the Interparty Agreement. *Id.* Plaintiff alleges that neither Miramax nor Open Road has paid the minimum guarantee payment to date. *Id.* ¶ 31.

### D. Procedural History

Plaintiff initiated this action against Miramax on August 29, 2018, asserting causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, and declaratory relief. Compl. ¶¶ 32-53.[4] On September 28, 2018, Miramax filed a motion to compel arbitration pursuant to Section 10.2(a) of the Interparty Agreement. Dkt. 15.

## II. Standard of Review

The Federal Arbitration Act (the "FAA") governs arbitration agreements in written contracts affecting interstate commerce. 9 U.S.C. § 2; *see Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001). The FAA reflects a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation marks and citations omitted).

---

[4] In a related case before this Court, on August 29, 2018, Bank Leumi filed a lawsuit against Open Road, Global Road, and Tang Media Partners LLC, each of which is a party to the Interparty Agreement, asserting claims for breach of the Interparty Agreement, breach of the implied covenant of good faith and fair dealing, intentional interference with contract, trade libel, and declaratory relief. *See Bank Leumi, USA v. Open Road Films, LLC et al.*, No. 2:18-cv-7573-SVW-KS (C.D. Cal.), Dkt. 1.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

Under the FAA, arbitration provisions in written contracts are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a party refuses to submit to a valid and enforceable arbitration agreement, the court shall order the parties to proceed to arbitration in accordance with the terms of the agreement. 9 U.S.C. § 3. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc v. Byrd*, 470 U.S. 213, 218 (1985). By "plac[ing] arbitration agreements on an equal footing with other contracts," the FAA "requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). Thus, the FAA "limits courts' involvement to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quotation marks and citation omitted).

Where parties "have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (internal quotation marks omitted) (emphasis in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). The scope of presumptively arbitrable issues includes applicable contract defenses. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (citations omitted).

**III. Analysis**

The central disagreement between the parties is the legal characterization of the substantive claims Plaintiff brings in this action. Plaintiff asserts that its claims against Miramax are all premised on the core issues of whether Mandatory Delivery and Complete Delivery were conclusively deemed effected under the terms of the Interparty Agreement and, consequentially, whether Miramax is obligated to pay the remaining amount of the minimum guarantee payment. Plaintiff thus views the entirety of the legal issues in this case as falling within the scope of Delivery Arbitration under Section 3.5 of the Interparty Agreement, and explicitly exempted from arbitration under Section 10.2(a). Plaintiff argues that because Miramax did not respond to the Second Cure Notices or the Reminder Notices sent by Plaintiff in accordance with Section 3.1(j), Miramax waived its right to submit the issue of whether delivery has been effected to arbitration under Section 3.5. *See* Dkt. 22 at 8-9.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

Miramax, on the other hand, disclaims any characterization of Plaintiff's claims as pertaining to Delivery Arbitration. Miramax argues that Section 3.5 is irrelevant because, as Plaintiff acknowledges, Delivery Arbitration only applies to disputes between Good Films, the Guarantor, and the Distributors (Miramax or Open Road). Thus, claims by Plaintiff against Miramax do not fall within the scope of arbitrable issues ever subject to Delivery Arbitration. Dkt. 26 at 1-2. Miramax continues that the legal issues to be resolved in Plaintiff's claims do not require "a determination of whether 'delivery' of the physical motion picture elements was technically sufficient." *Id.* at 2; *see also id.* at 4-5. Miramax's legal defense to Plaintiff's claims is a lack of consideration under the Interparty Agreement in exchange for the minimum guarantee payments, which, in Miramax's view does not implicate the question of whether delivery was effected. *Id.* at 2.

As to Section 10.2(a), Miramax asserts that Section 10.2(a) contains the "broadest language possible" in defining the scope of arbitrable issues. Dkt. 16 at 6. As Plaintiff's claims "arise directly out of" the Interparty Agreement for Miramax's failure to perform its obligations under the Interparty Agreement, Miramax concludes that Plaintiff must submit its entire case to arbitration. *Id.* at 7-8. In the alternative, Miramax points out that Section 10.2(a) also provides for arbitration of "the determination of the scope or applicability of this agreement to arbitrate." IPA § 10.2(a). Thus, Miramax also argues that questions about the scope of arbitrability of Plaintiff's claims are explicitly reserved for the arbitrator to determine in the first instance. Dkt. 26 at 6.

The Court agrees with Miramax that the Court has no occasion to address the scope of arbitration under the Interparty Agreement, because Section 10.2(a) clearly grants the arbitrator with such authority. It is true that, typically, the question of whether parties have agreed to arbitrate a particular dispute is for the court to decide by interpreting the arbitration contract. *Granite Rock*, 561 U.S. at 296, 301. However, despite this presumption that courts decide questions of arbitrability, if there is "clear and unmistakable evidence" that the parties intended for the arbitrator to decide arbitrability questions, then courts must enforce the arbitration agreement according to its terms and require the arbitrator to decide his or her own jurisdiction. *First Options*, 514 U.S. at 944 (alterations and quotation marks removed) (quoting *AT & T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Rent-A-Center*, 561 U.S. at 69 ("An agreement to arbitrate a gateway issue [such as arbitrability] is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.").

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

    Section 10.2(a) requires arbitration of all disputes "arising out of or related to this Agreement or the interpretation, performance or breach thereof." IPA § 10.2(a). Plaintiff does not challenge whether it is bound by the arbitration clause in Section 10.2(a) or whether there are any questions of contract formation that must be decided by the court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *Granite Rock*, 561 U.S. at 299-300. Plaintiff's claims indisputably "arise out of" the Interparty Agreement by seeking to hold Miramax liable for breaching its minimum payment obligations under the Interparty Agreement, which involves legal issues and determinations broader than the question of whether delivery was effected and whether Miramax's obligation to make minimum guarantee payments arose following delivery. Thus, Plaintiff's claims in this case are undisputedly subject to arbitration under Section 10.2(a) in at least some capacity.[5]

    Furthermore, the scope of arbitrable issues under Section 10.2 expressly includes "the determination of the scope or applicability of this agreement to arbitrate." IPA § 10.2(a). By requiring arbitration of disputes over the "scope or applicability" of arbitration, the parties clearly and unmistakably agreed to arbitrate the question of whether and to what extent Plaintiff's claims are subject to arbitration. *See, e.g.*, *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that a provision requiring binding arbitration over disputes regarding "the validity or application of any of the provisions of this [arbitration agreement]" constitutes clear and unmistakable evidence of an intent to arbitrate the question of arbitrability); *Cronin v. Monex Deposit Co.*, No. SACV 08-1297 DOC (MLGx), 2009 WL 412023, at *6 (C.D. Cal. Feb. 17, 2009) (holding that a clause providing for arbitration of "the

---

[5]     For instance, even assuming arguendo that delivery is deemed to be conclusively effected under Section 3.2(a) and that Miramax was initially obligated to make the minimum guarantee payment, the arbitrator may still be asked pursuant to Section 10.2 to determine whether any contract defenses exist, such as whether there was adequate consideration under the Interparty Agreement, that nonetheless relieve Miramax of its obligation to make the minimum guarantee payment. *See Tompkins*, 840 F.3d at 1022 (an arbitrator has jurisdiction to decide questions of "applicable contract defenses"). In fact, the provision establishing Delivery Arbitration appears to expressly *exclude* consideration of applicable contract defenses as part of the expedited arbitration proceedings: "No party shall assert in such proceeding any counter-claim or other offset, or any defense *other than* the defense of a failure to effect Mandatory Delivery and/or Complete Delivery, as applicable." IPA § 3.5(f) (emphasis added). Plaintiff's claims in this action for breach of the implied covenant of good faith and fair dealing, intentional interference with contract, and declaratory relief all stem from the allegation that Miramax failed to make the minimum guarantee payment when required, but each of those claims encompass a multitude of factual and legal determinations beyond simply "the issue of whether Mandatory Delivery and/or Complete Delivery, as applicable, has been effected." *Id.* § 3.5. The Court does not make any concrete determinations on the extent of the arbitrator's jurisdiction over these issues, however, because as explained below, the parties delegated to the arbitrator the authority to decide his or her own jurisdiction.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

determination of the scope or applicability of this agreement to arbitrate" is clear and unmistakable evidence that "the arbitrator must decide the scope or applicability of the arbitration clause to the parties' dispute"). Even without the express language providing for arbitration over disputes about "scope or applicability," courts nevertheless have found clear and unmistakable evidence of an intent to arbitrate questions of arbitrability in a broad commercial arbitration clause requiring arbitration of disputes "arising out of or related to this agreement." *See Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, No. CV 09–6478 PA (FFMx), 2010 WL 11545431, at *2 (C.D. Cal. Apr. 5, 2010) (citing *New England Mech., Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1345 (9th Cir. 1990)). Thus, Plaintiff and Miramax have clearly and unmistakably agreed to delegate to the arbitrator any disputes about the scope of arbitration over the claims Plaintiff raises in this action.

This result is further supported by the parties' incorporation by reference of the AAA arbitration rules in Section 10.2(a). AAA Commercial Arbitration Rule 7(a) states: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." Dkt. 22-2 at 13. The Ninth Circuit has noted the prevailing view across circuit courts that, in light of AAA Rule 7(a), "incorporation of the [AAA] arbitration rules [into an arbitration agreement] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases). While *Oracle America* applied this principle to a different set of private arbitration rules, the Ninth Circuit ultimately adopted the same position regarding the AAA rules themselves, holding that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Therefore, because the Interparty Agreement requires that "arbitration shall be initiated and conducted according to AAA and the Rules," IPA § 10.2(a), Plaintiff and Miramax clearly and unmistakably contemplated that the arbitrator would decide the extent of his or her own jurisdiction.

In light of the clear and unmistakable evidence to arbitrate arbitrability, whether the carve-out for Delivery Arbitration under Section 3.5 applies to remove Plaintiff's claims from arbitration under Section 10.2(a) is a question of arbitrability that the arbitrator must determine. In *Oracle America*, the Ninth Circuit was presented with a broad arbitration provision with a carve-out authorizing either party to bring an action in court regarding disputes "relating to" intellectual property rights or licenses. 724 F.3d at 1075. The Ninth Circuit noted that "when a tribunal decides that a claim falls within the scope of a carve-out provision, it necessarily decides arbitrability." *Id.* at 1076. Because the parties had clearly and unmistakably provided for arbitration of arbitrability questions, the Ninth Circuit rejected the

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC |  |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

argument that the carve-out provision gave the district court exclusive jurisdiction to determine whether the plaintiff's intellectual property claims are arbitrable:

> Oracle's argument conflates the *scope* of the arbitration clause, *i.e.*, which claims fall within the carve-out provision, with the question of *who* decides arbitrability. The decision that a claim relates to intellectual property rights or compliance with the TCK License constitutes an arbitrability determination, which the parties have clearly and unmistakably delegated to the arbitrator by incorporating the UNCITRAL rules.

*Id.* at 1076 (emphasis in original). Here, Plaintiff's position that the Court must decide whether Plaintiff's claims are subject to arbitration under Section 10.2(a) due to the carve-out for Delivery Arbitration is incorrect for the same reasons as set forth in *Oracle America*. The parties clearly and unmistakably intended for the arbitrator to determine the bounds of his or her own jurisdiction over Plaintiff's claims in this action, and the decision that Section 3.5 precludes arbitration over all or certain portions of the parties' dispute is unquestionably an "arbitrability determination."[6]

In summary, Plaintiff's claims against Miramax fall under the scope of arbitration under Section 10.2(a) of the Interparty Agreement, which contains clear and unmistakable evidence that the arbitrator is to decide questions of arbitrability. Accordingly, the Court must grant Miramax's motion to compel arbitration over Plaintiff's claims, which in the first instance will require a determination of the scope of the arbitrator's own jurisdiction. The arbitrator may determine that all or some of the issues in Plaintiff's

---

[6]  Plaintiff's supplemental brief opposing the motion to compel arbitration, Dkt. 30, is of no help to Plaintiff's position. Plaintiff relies on *Martin v. Yasuda*, 829 F.3d 1118 (9th Cir. 2016), for the proposition that Miramax's waiver of the right to partake in Delivery Arbitration under Section 3.5 of the Interparty Agreement is a question that must be determined by the court, not the arbitrator. However, the Ninth Circuit's holding in *Martin* was limited to "waiver by litigation conduct," which the Ninth Circuit held to be a "question of arbitrability" that the arbitrator could decide only if there is clear and unmistakable evidence that the parties so intended. *Martin*, 829 F.3d at 1123. *Martin* is easily distinguishable, because here Plaintiff has not alleged that Miramax waived its right to initiate arbitration under Section 10.2 through Miramax's conduct in this litigation. Plaintiff's allegations that Miramax waived the right to Delivery Arbitration has no bearing on Miramax's right to initiate arbitration under Section 10.2, and the Court has no occasion to address Plaintiff's waiver argument regarding Delivery Arbitration in response to the instant motion to compel arbitration pursuant to Section 10.2. Furthermore, unlike in *Martin*, and as explained above, the Interparty Agreement *does* give the arbitrator authority to determine questions of arbitrability based on the broad language of the arbitration agreement and the incorporation by reference of the AAA rules. Therefore, it will be for the arbitrator to interpret the Interparty Agreement and make determinations about the scope of the arbitrator's jurisdiction, which may or may not include a determination of whether delivery is conclusively deemed to be effected.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

claims are exempted from arbitration under Section 10.2(a), such as issues falling within the scope of Delivery Arbitration under Section 3.5. If so, then the Court will be tasked with resolving those issues in accordance with the terms of the Interparty Agreement.

### IV.    Interim Relief

The parties also dispute whether issues of interim relief are properly before the arbitrator or before this Court. On October 3, 2018, just five days after Miramax filed its motion to compel arbitration, Plaintiff filed an application for writ of attachment before Magistrate Judge Stevenson. Dkt. 19. On December 13, 2018, Judge Stevenson issued an Order granting Plaintiff's application for a writ of attachment and issuing an Order of Attachment to Miramax for $3,825,000, the remainder of the minimum guarantee payment allegedly owed to Plaintiff. *See* Dkt. 49.

Although Miramax has not yet sought review of Judge Stevenson's Order, the Court vacates Judge Stevenson's Order granting Plaintiff's request for interim relief. Judge Stevenson never had the occasion to address the question presented before this Court—*i.e.*, to what extent does the arbitrator have jurisdiction over Plaintiff's claims—and therefore could not benefit from the Court's ruling that the parties delegated determinations of arbitrability to the arbitrator. But as set forth above, it is for the arbitrator to decide which issues, including the availability of interim relief, are subject to arbitration and are subject to court review.

Moreover, whether interim relief is appropriate is properly for the arbitrator to decide pursuant to the parties' adoption of the AAA rules in Section 10.2(a) of the Interparty Agreement. AAA Commercial Arbitration Rule 37(a) states that "[t]he arbitrator may take whatever interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods." Dkt. 22-2 at 24. Just as the incorporation of the AAA rules into the Interparty Agreement by reference constitutes "clear and unmistakable evidence" of an intent for the arbitrator to decide questions of arbitrability, so too does the Interparty Agreement provide the arbitrator with jurisdiction to impose interim relief measures such as Plaintiff's writ of attachment. *See Bank of Hemet v. Open Sols., Inc.*, No. CV 10-692 CAS (OPx), 2011 WL 486572, at *3 (C.D. Cal. Feb. 3, 2011) ("[B]y incorporating the rules of the American Arbitration Association into the arbitration provision of the Master Services Agreement, the parties have agreed that requests for injunctive relief could be decided in arbitration.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

    Plaintiff correctly notes that AAA Commercial Arbitration Rule 37(c) authorizes parties to seek interim relief in court without being incompatible with the arbitration agreement. *See* Dkt. 22-2 at 24. However, the Ninth Circuit has cautioned that, where the district court concludes that all of a plaintiff's claims are arbitrable and that the arbitrator is authorized to grant interim relief, "it would [be] inappropriate for the court to grant preliminary injunctive relief." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). Courts accordingly decline requests for injunctive relief when the arbitrator has jurisdiction over interim relief measures under a binding arbitration agreement, even if the court has authority to issue such relief on its own. *See, e.g., DHL Info. Servs. (Americas), Inc. v. Infinite Software Corp.*, 502 F. Supp. 2d 1082, 1083-84 (C.D. Cal. 2007) (denying motion for preliminary injunction because "it is best not to carve out interim relief from the issues the arbitrator will decide, even though Rule [37(c)] of the AAA Rules would allow this Court to do so"); *Bank of Hemet*, 2011 WL 486572, at *3 (granting motion to compel arbitration, including arbitration of the plaintiff's requests for injunctive relief, because the arbitration agreement adopted the AAA rules).

    In *China National*, the district court analyzed an agreement requiring arbitration before the China International Economic and Trade Arbitration Commission ("CIETAC"). *China Nat'l Metal Prods. Imp./Exp. Co. v. Apex Digital, Inc.*, 155 F. Supp. 2d 1174, 1181 (C.D. Cal. 2001). CIETAC rules allowed parties to apply for "property preservative measures," which would be submitted by CIETAC to an appropriate people's court. *Id.* The plaintiff applied for a writ of attachment before the magistrate judge, arguing that the court has jurisdiction to issue interim relief measures because the procedures in CIETAC rules for obtaining interim relief measures did not allow CIETAC to issue such relief directly. *Id.* The magistrate judge granted the plaintiff's application, determining that the court was authorized to grant provisional relief because the arbitral tribunal itself was not authorized to award equivalent relief. *Id.* The district court reversed the magistrate judge and concluded that the court "has no authority to grant a pre-arbitral award writ of attachment." *Id.* at 1182. The court rejected the plaintiff's reliance on the distinction between the arbitral tribunal's act of issuing the relief itself versus submitting the provisional relief application to a people's court. *Id.* The court reasoned that CIETAC's arbitration rules "provide a method and forum for obtaining provisional relief" and therefore, under *Simula*, "the court must respect that agreement and refrain from awarding provisional relief when the parties have provided for another means to obtain such relief." *Id.* Therefore, the court held that "the magistrate judge's right to attach order granting a writ of attachment was contrary to law and must be set aside." *Id.*

    As in *China National*, Judge Stevenson's Order issuing a writ of attachment is contrary to the parties' intentions regarding the scope of arbitrable issues pursuant to the Interparty Agreement. A decision to grant interim relief infringes upon the arbitrator's jurisdiction to issue the same relief, which

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:18-cv-07574-SVW-KS | Date | December 27, 2018 |
|---|---|---|---|
| Title | *Bank Leumi, USA v. Miramax Distribution Services, LLC et al.* | | |

contravenes the policies of the FAA favoring arbitration. The parties agreed in the Interparty Agreement to grant to the arbitrator the full power and authority provided to arbitrators under the AAA rules, including over issues of interim relief, and the Court must honor the parties' agreement to the maximum extent possible in order to effectuate the parties' contractual intent.

Miramax argued in opposition to Plaintiff's application for writ of attachment that the request for interim relief was precluded by Miramax's pending motion to compel arbitration. Dkt. 49 at 20. Judge Stevenson rejected Miramax's argument, concluding that "Section 10.2 is inapplicable to the resolution of the Application with respect to Delivery and the payment obligations under Section 3 of the IPA." *Id.* Judge Stevenson's conclusion that Section 10.2 does not apply to Plaintiff's application for interim relief is necessarily a determination of the "scope or applicability" of the arbitration provision in the Interparty Agreement, which, as explained in detail above, is an "arbitrability" question solely reserved for the arbitrator. The arbitrator may ultimately reach the same conclusion that Section 10.2(a) is irrelevant to the question of whether a writ of attachment should issue. Nevertheless, since the arbitrator is vested with the authority to issue interim relief measures and interpret the scope of his or her jurisdiction, the Court must abstain from such making determinations about interim relief before the arbitrator accepts control over the parties' dispute.

**V.      Conclusion**

Based on the above, the Interparty Agreement requires arbitration over Plaintiff's claims, including all questions regarding the scope or applicability of the arbitration provision. Miramax's motion to compel arbitration is GRANTED, and Magistrate Judge Stevenson's Order granting Plaintiff's application for a writ of attachment is VACATED.

Because the arbitrator may determine that all or some of the issues in Plaintiff's claims must be resolved by this Court, dismissal of Plaintiff's case at the present time would be premature and an inefficient use of judicial resources. Thus, Plaintiff's case is STAYED pending the arbitrator's ruling. *See* 9 U.S.C. § 3.

IT IS SO ORDERED.

|   | : |
|---|---|
| Initials of Preparer | PMC |